**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **CESAR ALBERTO COCCO,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **1:24-cv-7811** |
| | ) | |
| **GOOGLE, INC.,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendant.* | ) | |

## COMPLAINT

Plaintiff Cesar Alberto Cocco ("Plaintiff" or "Mr. Cocco") brings this Complaint against Defendant Google, Inc. ("Defendant" or "Google" or the "Company") to redress violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq*., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*.

## NATURE OF CLAIMS

1.    Google hired Mr. Cocco in 2018 to serve in its Agency Partnership Business Unit. Mr. Cocco excelled in his performance and Google promoted him from L4 to L5 and recruited him for the role of Senior Product Lead in August 2022. Mr. Cocco suffers from post-traumatic stress disorder ("PTSD" and anxiety—both disabilities under the ADA, NYSHRL, and NYCHRL— stemming from a brutal attack in 2014. Mr. Cocco was also diagnosed with Stage 3 Hodgkin's Lymphoma in 2016—disabilities for which he continues to receive medical treatment. Despite Mr. Cocco's outstanding performance, Google refused to accommodate Mr. Cocco and terminated Mr.

Cocco's employment after Mr. Cocco took protected leave and requested reasonable accommodations for his disabilities.

## PARTIES

2.      Plaintiff, Mr. Cocco, is an individual and resident of Fort Lee, New Jersey.  Google employed Mr. Cocco from August 2018 through June 27, 2024, and at all times relevant to this complaint.  Throughout his employment with Google, Mr. Cocco primarily performed work for Google in New York City, in the Southern District of New York.

3.      Defendant, Google, is a limited liability company formed under the laws of the State of Delaware with a principal place of business at 1600 Amphitheater Parkway, Mountain View, CA  94043.  Google employs workers across the globe, including within the Southern District of New York.

## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1331 because this claim arises under federal statutes, including the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").

5.      This Court also has supplemental jurisdiction of the claims that arise under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.* and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* pursuant to 28 U.S.C. § 1367 because these claims arise out of the same events or omissions and form part of the same case or controversy as the federal claims that are properly before this Court.

6.     Venue is proper in this judicial District under 28 U.S.C. §§ 1391(b), (c) because Defendant conducts business in this District and a substantial part of the events or omissions giving rise to these claims alleged herein occurred in this District.

## ADMINISTRATIVE REMEDIES

7.     Within 300 days of the discriminatory conduct of which he complains, Plaintiff filed a charge of discrimination on the basis of disability with the United States Equal Employment Opportunity Commission ("EEOC") on August 5, 2024 pursuant to the ADA, NYSHRL, and NYCHRL.

8.     Once Plaintiff receives a NRTS from the EEOC, Plaintiff will amend this Complaint to fulfill all necessary administrative prerequisites under the ADA.

9.     Neither the NYSHRL nor the NYCHRL requires administrative exhaustion prior to filing a complaint. *See Branker v. Pfizer, Inc.*, 981 F. Supp. 862, 865 (S.D.N.Y. 1997) (plaintiff's "claim under the NYSHRL is not administratively barred, because that statute contains no requirement of exhaustion of administrative remedies"); *Hernandez v. New York City Law Dep't Corp. Counsel*, 1997 U.S. Dist. LEXIS 620, at *29 (S.D.N.Y. Jan. 23, 1997) ("Unlike Title VII, the NYSHRL and NYCHRL do not require exhaustion of administrative remedies").

10.     The FMLA does not require an exhaustion of administrative remedies. *See Manos v. Geissler*, 377 F. Supp. 2d 422, 427 (S.D.N.Y. 2005) ("FMLA does not require an exhaustion of administrative remedies prior to initiation of a lawsuit under its provisions").

**FACTUAL ALLEGATIONS**

11.    Google hired Mr. Cocco in August 2018 to join its Agency Partnership Team. Due to Mr. Cocco's outstanding experience and performance, in August 2022, Google promoted Mr. Cocco to an L5 and named him the Senior Product Lead for the Agency business Unit.

12.    Because of his exceptional abilities, Google relied upon Mr. Cocco to be the only Privacy Product Lead for the Agency Business Unit, whereas most other business units at Google have 3 to 4 Privacy Product Leads.

13.    Supervisors and directors at Google recognized Mr. Cocco for his team's superior metrics, his wealth of knowledge and experience, and his outstanding relationships with agencies and stakeholders, frequently noting in his performance evaluations that his outstanding performance had a "significant impact" within the Company.  In recognition of his talents, Google provided Mr. Cocco with numerous performance awards and relied upon him as an expert speaker when collaborating with regional and global marketing teams and in leading Google's national and global summits and training academies.

**Mr. Cocco Requested Reasonable Accommodations for His PTSD and Anxiety.**

14.    Unfortunately, in 2014, Mr. Cocco was brutally attacked in New York City, causing him to suffer post-traumatic stress disorder ("PTSD") and severe anxiety.

15.     PTSD and anxiety are both medical conditions that affect the major bodily functions of brain and nervous system operation and functioning.  The effects on the functions of the brain and nervous system caused by  PTSD and anxiety cause substantial limitations in Mr. Cocco's ability to perform major life activities like sleeping, concentrating, working, and social interaction.

16.     Additionally, Mr. Cocco was diagnosed with Stage 3 Hodgkin's Lymphoma in March 2016, for which he underwent chemotherapy.

17.     The cancer diagnosis and treatment aggravated Mr. Coco's PTSD and severe anxiety.

18.     Throughout his employment, Mr. Cocco openly communicated with Google that he had these medical disabilities and often used his experiences with PTSD and anxiety to motivate and inspire his team at Google.

19.     From December 4, 2023 through March 1, 2024, Mr. Cocco took FMLA leave to cope with his disability symptoms and work on new coping strategies with his healthcare providers.

20.     During the leave, Mr. Cocco's medical providers identified his commute into New York City for work—where he was previously attacked—as a trigger for the onset of his PTSD and anxiety symptoms and that this trigger was worsening his PTSD and anxiety.

21.     Mr. Cocco's medical providers recommended reasonable accommodations of fully remote work and breaks throughout the day for a period of two years.

22.     On March 1, 2024, Mr. Cocco returned from his FMLA leave and requested (1) fully remote work, (2) a one-hour lunch break each day, and (3) 15-30 minute breaks between meetings as reasonable workplace accommodations.

23.     At the time of Mr. Cocco's request for reasonable accommodations, Google had a soft policy of allowing remote work 2 days per week that was not strictly enforced.  In actuality, Google allowed for remote work of 3 to 4 days weekly for Mr. Cocco, many other Google employees on his team, and other employees throughout the country.

24.     Prior to his request, on the days Mr. Cocco was in the office, he spent most of his time on his computer and seldomly attended meetings where in-person interactions were required.

25.     Many of Mr. Cocco's team members worked across the country, and in-person team meetings rarely occurred, especially because Mr. Cocco's direct supervisor, Flora Ching ("Ms. Ching") worked 100% remotely from Oklahoma, although her "home office" was in California.

26.     Additionally, Google had been encouraging employees to meet virtually and to travel less in an effort to minimize travel costs for the Company.

27.     Mr. Cocco's reasonable accommodation request for full time remote work with occasional commutes to the office and locations across the US for mandatory meetings and business-related travel was not only reasonable but it was also in line with Google's practices at the time.

**Google Denied Mr. Cocco's Reasonable Accommodation Requests.**

28.     Google denied Mr. Cocco's reasonable accommodation request. In denying Mr. Coco's request for reasonable accommodations, Google claimed that Mr. Cocco was unable to perform the essential functions of his job with or without accommodations.

29.     Prior to his disability leave, Mr. Cocco had been performing the essential functions of his job not only satisfactorily, but exceptionally, as evidenced by his performance reviews, awards, and other commendations.

30.     Prior to his accommodation request, Mr. Cocco worked remotely 2-4 days per week and attended most meetings virtually. There was no function of Mr. Cocco's job which he could not perform with his requested accommodations.

**<u>Google Created Pretextual Reasons to Justify Denying Mr. Cocco Every Open Role For Which Mr. Cocco was Qualified and Applied.</u>**

31. After denying Mr. Cocco's request for reasonable accommodations, Google entered Mr. Cocco into a "Priority Reassignment" process, whereby Mr. Cocco was required to identify roles within the Company for which he was eligible and to meet with the hiring managers for these open roles to discuss his needed accommodations. The "Priority Reassignment" process is a Google mechanism by which an employee seeking workplace accommodations can identify and apply for open roles for which they are qualified where they can be accommodated.

32. On March 29, 2024, Google placed Mr. Cocco on unpaid leave. Mr. Cocco took FMLA leave beginning March 29, 2024 while he participated in the Priority Reassignment process.

33. During the Reassignment Process, Mr. Cocco identified more than 25 open roles for which he was qualified and where he could be reassigned with his accommodation requests.

34. However, with each role, Google searched for and created reasons why Mr. Cocco was not qualified for the open role, or why his disabilities could not be accommodated within those roles. Google also changed the position descriptions for open roles after meeting with Mr. Cocco to thereby disqualify him from transferring to open roles.

35. For example, Mr. Cocco identified the Global Product Lead role as a role for which he was qualified. The individual who previously held the title, Tess Cameran, performed the role fully remotely. Mr. Cocco received feedback from the hiring manager, Claire Fanning ("Ms. Fanning"), who agreed that Mr. Cocco was qualified for the position. However, Ms. Fanning told the Accommodations team that his request for a 1-hour lunch break everyday might disqualify him from the role because "most of the team does not take lunch."

36.     However, Mr. Cocco spoke with many of the team members on Ms. Fanning's team and they all confirmed they took lunch breaks every day. Further, most of the team members had 1 hour lunch break blocks on their shared calendars every day.

37.     Google then took 60 days to perform an undue hardship analysis. On June 20, 2024, Google communicated that Mr. Cocco's transfer to the Global Product Lead role would not be an undue hardship. However, instead of transferring Mr. Cocco into this position for which he qualified and where he could be accommodated, Google eliminated the open position.

38.     The Global Product Lead role was a key position on one of the most high-demand and top-performing teams in all of Google; it was illogical and inconsistent that Google would hold the role open for several months and only "eliminate" the role after Mr. Cocco's undue hardship analysis was completed.

39.     Mr. Cocco met the minimum qualifications for several other roles, but once each hiring manager learned of Mr. Cocco's reasonable ADA accommodation request, the manager would change or increase the minimum requirements so that Mr. Cocco no longer fell within the qualified range.

40.     Specifically, this occurred with the Google Cloud Service ("GCS") Manager Enablement Lead role. Mr. Cocco met the minimum qualifications described in the position description, but after meeting with the hiring manager,  the hiring manager changed the minimum position requirements to add an additional requirement that the candidate have specialized sales experience.

41.     Although Mr. Cocco had significant sales experience, Google still refused to transfer him to this open role. Mr. Cocco discussed the increased job requirements with the recruiter for the role, Jill Miller, who stated that she was not clear why Mr. Cocco's 7 years of

experience in sales enablement and direct sales did not fulfill the qualifications of the role as posted.

42.    Another example was the Strategic Employer Engagement Lead role. Mr. Cocco met the minimum qualifications.  However, the hiring manager, Rob Magliaro, after learning of the reasonable accommodation request, claimed that despite the fact that it was not listed in the job description, the position required a lot of travel; and Mr. Cocco could not be accommodated in this role. Again, this was an example of a hiring manager adding or changing the position requirements after learning of Mr. Cocco's accommodation requests.

43.    A third example was the Sales Enablement Consultant role.  Although Mr. Cocco met the minimum qualifications, the hiring manager, Mr. Anjai, told Mr. Cocco that he had "preferences" that were not listed in the job posting for someone with more "enterprise experience" in sales than Mr. Cocco.

44.    A fourth example was the role of Apigee Sales Specialist, GCS.  After Mr. Cocco listed this position as one of interest, the hiring manager, Dan Mearls, removed the posting and the position became suddenly unavailable.

45.    A fifth example was the position of Apple Partnerships Manager, You Tube, for which Mr. Cocco qualified. Christine Kim, the hiring manager, told the Mobility team that Google was unable to accommodate 15–30-minute breaks between meetings. Mr. Cocco later withdrew his request for 15-30 minute breaks between meetings after facing push back from hiring managers.

46.    A sixth example was the position of Innovation Consultant, GCS.  The  hiring manager, Stefan Schaeuble, told the Accommodations team that Google was unable to

accommodate his reasonable accommodation request because the role required travel that was not listed in the job description.

### Google Terminated Mr. Cocco's Employment After Denying Him a Reasonable Accommodation and 4 Months After His Protected Activity.

47.     Three  months after Mr. Cocco's request for a reasonable ADA accommodations and after weeks of identifying and interviewing for alternative roles into which Google had no intention of placing Mr. Cocco, Google terminated Mr. Cocco's employment on June 27, 2024.

48.     Google's stated reason for the termination of Mr. Coco's employment was that Google could not accommodate Mr. Cocco in his current position and could not identify any other positions for which Mr. Cocco, who had been an outstanding and productive Google employee for 6 years, could be accommodated.

49.     Google's decision to terminate Mr. Cocco's employment came just 4 months after Mr. Cocco returned from FMLA leave and requested reasonable workplace accommodations.

### CAUSES OF ACTION

### COUNT ONE
### ADA, NYSHRL, NYCHRL
### Disability Discrimination

50.     Mr. Cocco incorporates by reference paragraphs 11 to 49 as alleged above.

51.     The ADA, the NYSHRL, and the NYCHRL prohibit employers from discriminating against employees because of their disabilities.

52.     Mr. Cocco has diagnoses of PTSD, anxiety, and cancer—all medical conditions that affect major bodily functions and substantially limit major life activities.

53.     Therefore, Mr. Cocco is disabled within the meaning of the ADA, the NYSHRL, and the NYCHRL.

54.    Mr. Cocco was qualified to perform the essential functions of his position at Google.  Mr. Cocco had more than 10 years of experience in sales, products, account strategy, and account management prior to being hired by Google.  Mr. Cocco performed successfully in his position at Google and won numerous awards, accolades, and a promotion from Google.  Google praised Mr. Cocco's performance as outstanding in every performance rating.

55.    Google permitted Mr. Cocco to work remotely 40% - 80% of the time, commuting to the office for onsite work occasionally and traveling for business once quarterly.

56.    Onsite work was not an essential part of Mr. Cocco's job position.

57.    Frequent travel was not an essential part of Mr. Cocco's job position.

58.    Mr. Cocco was able to perform the essential functions of his job prior to his request for reasonable accommodations and with his requested accommodations.

59.    However, rather than accommodate Mr. Cocco in his current role or transfer Mr. Cocco to an open role for which he was qualified, Google terminated Mr. Cocco's employment on June 27, 2024.

60.    Google terminated Mr. Cocco's employment because of his disabilities.

61.    Google's actions violate the ADA, the NYSHRL, and the NYCHRL.

62.    Google acted in a willful and wanton manner and in callous disregard for Mr. Cocco's statutorily protected rights.

63.    As a direct and proximate cause of Google's discriminatory conduct, Mr. Cocco has suffered and continues to suffer considerable injury, including but not limited to loss of past and future income, benefits and other privileges and entitlements of employment, mental anguish, severe emotional distress, medical costs, and other compensable damages unless and until this

Court grants relief. Mr. Cocco is also entitled to attorneys' fees and costs, and other damages as recoverable by law.

**COUNT TWO**
**ADA, NYSHRL, NYCHRL**
**Failure to Accommodate**

79. Mr. Cocco incorporates by reference paragraphs 11 to 49 as alleged above.

80. Mr. Cocco has diagnoses of PTSD, anxiety, and cancer—all medical conditions that affect major bodily functions and substantially limit major life activities.

81. Therefore, Mr. Cocco is disabled within the meaning of the ADA, the NYSHRL, and the NYCHRL.

82. Mr. Cocco was qualified to perform the essential functions of his position at Google. Mr. Cocco performed successfully in his position at Google and won numerous awards, accolades, and a promotion from Google. Google praised Mr. Cocco's performance as outstanding in every performance rating.

83. Google permitted Mr. Cocco to work remotely most of the time prior to his reasonable accommodation request. Onsite work was not an essential part of Mr. Cocco's job position.

84. Mr. Cocco traveled for business less than once quarterly. Frequent travel was not an essential part of Mr. Cocco's job position.

85. The essential functions of Mr. Cocco's job as Senior Product Lead for the Agency Business Unit included activities he could perform remotely, from anywhere in the United States. Mr. Cocco was able to perform the essential functions of his job with the reasonable accommodation of working remotely 5 days per week, commuting occasionally for in-person meetings, and once quarterly business travel.

86. Google permitted other employees on Mr. Cocco's team who were not disabled to work remotely.

87. Google permitted Mr. Cocco's supervisor, Ms. Ching, to work remotely 100% of the time from Oklahoma, when her job base was in California.

88. Google refused to provide Mr. Cocco with the reasonable accommodation request of working remotely 5 days per week with occasional commutes and business travel in his current position and terminated him from that position despite the fact that he had been working under these conditions prior to formally requesting the accommodation.

89. Google also refused to provide Mr. Cocco with a 1-hour lunch break and 15-30 minute breaks between meetings. There was no logical reason why Google could not have afforded Mr. Cocco these reasonable breaks.

90. Mr. Cocco's requested accommodations did not cause an undue hardship on Google.

91. Mr. Cocco was qualified for other open positions at Google which also aligned with his reasonable accommodation requests.

92. Even Google recognized there were open roles for which Mr. Cocco was qualified and where accommodating Mr. Cocco would not cause an undue hardship on the Company; however, rather than transfer Mr. Cocco to those open roles, Google closed the open role and terminated Mr. Cocco's employment.

93. When Mr. Cocco found open positions within the Company for which he qualified, instead of transferring Mr. Cocco to the position and for which the accommodations could be provided, Google created pretextual reasons to disqualify Mr. Cocco from the open roles.

94.     Google refused to provide Mr. Cocco with a reasonable accommodation and instead terminated Mr. Cocco's employment on June 27, 2024.

95.     Google's failure to provide reasonable accommodations to Mr. Cocco was in violation of the ADA, the NYSHRL, and the NYCHRL.

96.     Google acted in a willful and wanton manner and in callous disregard for Mr. Cocco's statutorily protected rights.

97.     As a direct and proximate cause of Google's discriminatory conduct, Mr. Cocco has suffered and continues to suffer considerable injury, including but not limited to loss of past and future income, benefits and other privileges and entitlements of employment, mental anguish, severe emotional distress, medical costs, and other compensable damages unless and until this Court grants relief.  Mr. Cocco is also entitled to attorneys' fees and costs, and other damages as recoverable by law.

## COUNT THREE
### ADA, NYSHRL, NYCHRL
**Retaliation**

98.     Mr. Cocco incorporates by reference paragraphs 11 to 49 as alleged above.

99.     The ADA, the NYSHRL, and the NYCHRL prohibit retaliation against employees who engage in protected activity under the statutes.

100.    Mr. Cocco took protected disability-related leave from November 29, 2023 through March 1, 2024.

101.    Mr. Cocco engaged in protected activity by requesting reasonable accommodations for his disabilities on March 1, 2024.

102.    Google placed Mr. Cocco on unpaid leave on March 29, 2024, less than 30 days after Mr. Cocco's protected activities.

14

103.   Less than 4 months after Mr. Cocco returned from disability-related leave and requested reasonable accommodations, Google terminated Mr. Cocco's employment on June 27, 2024.

104.   The temporal proximity between Mr. Cocco's protected activity and Google's decision to place him on unpaid leave and terminate his employment  gives rise to an inference of retaliation by Google for engaging in protected activity.

105.   Google's retaliatory conduct is a violation of the ADA, the NYSHRL, and the NYCHRL.

106.   Google acted in a willful and wanton manner and in callous disregard for Mr. Cocco's statutorily protected rights.

107.   As a direct and proximate cause of Google's discriminatory conduct, Mr. Cocco has suffered and continues to suffer considerable injury, including but not limited to loss of past and future income, benefits and other privileges and entitlements of employment, mental anguish, severe emotional distress, medical costs, and other compensable damages unless and until this Court grants relief.  Mr. Cocco is also entitled to attorneys' fees and costs, and other damages as recoverable by law.

**COUNT FOUR**
**The FMLA**
**FMLA Retaliation**

108.   Mr. Cocco incorporates by reference paragraphs 11 to 49 as alleged above.

109.   The FMLA prohibits adverse employment actions against employees who engage in protected activity under the FMLA.

110.   Google is an employer who employed fifty (50) or more employees for each working day for at least twenty (20) work weeks in the year prior to Mr. Cocco's leave.

15

111.    Mr. Cocco is an FMLA-eligible employee because he was employed by Google for more than 5 years prior to requesting FMLA leave and had been employed by Google for over 1,250 hours in the 12-month period prior to his request.

112.    Mr. Cocco took FMLA leave from November 29, 2023 to March 1, 2024.

113.    Mr. Cocco took FMLA leave again beginning March 29, 2024. While Mr. Cocco was on FMLA leave, Google terminated his employment.

114.    Google terminated Mr. Cocco's employment less than 4 months after he returned from his original FMLA leave and less than 3 months after Mr. Cocco resumed FMLA leave.

115.    The temporal proximity between Mr. Cocco's FMLA leaves and Google's decision to terminate his  employment gives rise to an inference of retaliation.

116.    Google's retaliation against Mr. Cocco was in violation of the FMLA.

117.    Google acted in a willful and wanton manner and in callous disregard for Mr. Cocco's federally protected rights.

118.    As a direct and proximate cause of Google's retaliatory conduct, Mr. Cocco has suffered and continues to suffer considerable injury, including but not limited to loss of past and future income, benefits and other privileges and entitlements of employment, mental anguish, severe emotional distress, medical costs, and other compensable damages unless and until this Court grants relief.  Mr. Cocco is also entitled to attorneys' fees and costs, and other damages as recoverable by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

    (a)    declaring that the acts and practices complained of herein are violations of the ADA, FMLA, NYSHRL, and NYCHRL;

(b)      enjoining and permanently restraining these violations;

(c)      directing Defendant to take such affirmative action as is necessary to ensure that the effects of these violations are eliminated;

(d)      directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory treatment, and to make him whole for all earnings he would have received but for Defendant's discriminatory treatment, including but not limited to lost wages, back pay, front pay, interest, and other lost benefits;

(e)      directing Defendant to pay Plaintiff compensatory damages for his mental anguish and severe emotional distress;

(f)      directing Defendant to pay Plaintiff punitive/liquidated damages;

(g)      directing Defendant to pay Plaintiff nominal damages;

(h)      awarding Plaintiff pre- and post-judgment interest;

(i)      awarding Plaintiff the costs of this action together with reasonable attorneys' fees;

(j)      and granting such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

> */s/ Melissa Washington*
> Melissa Washington
> mw@washingtonfirmpllc.com
> WASHINGTON LAW FIRM, PLLC
> 260 Madison Avenue, 8th Floor
> New York, NY 10016
> (646) 823-1655