UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| C.C., | | |
| | Plaintiff, | 24 Civ. 7811 (PAE) |
| -v- | | |
| GOOGLE, LLC., | | OPINION & ORDER |
| | Defendant. | |

PAUL A. ENGELMAYER, District Judge:

This case involves an employee's claims of disability discrimination. Plaintiff C.C. sues his former employer, Google, LLC ("Google"), bringing claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 2000 *et seq.* ("ADA"), the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). His claims are for (1) disability discrimination under the ADA, NYSHRL, and NYCHRL; (2) failure to accommodate under the ADA, NYSHRL, and NYCHRL; (3) retaliation for seeking accommodations under the ADA, NYSHRL, and NYCHRL; and (4) retaliation for taking leave under the FMLA.

Google now moves to dismiss C.C.'s Amended Complaint ("AC"), Dkt. 10, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court denies the motion as to the failure-to-accommodate claims but otherwise dismisses all claims.

## I.    Background[1]

### A.    Factual Background

#### 1.    Parties

Google is a limited liability company with its principal place of business in California. AC ¶ 3.  C.C., a New Jersey resident, was employed by Google between August 2018 and June 27, 2024.  *Id.* ¶ 2.

#### 2.    Overview of C.C.'s Factual Allegations

##### a.    *Employment history*

In August 2018, C.C. joined Google's agency partnership business unit.  *Id.* ¶ 1.  In August 2022, Google named C.C. the senior product lead for its agency business unit.  *Id.* During his tenure, Google gave C.C. performance awards and, in performance reviews, noted his "significant impact" within the company.  *Id.* ¶ 14.

##### b.    *Medical history*

In 2014, C.C. "was brutally attacked in New York City, causing him to suffer post-traumatic stress disorder ('PTSD') and severe anxiety."  *Id.* ¶ 15.  His symptoms, which sometimes last for "hours or days," *id.* ¶ 24, include "fear, worry, distress, mental anguish, flashbacks, and nightmares," *id.* ¶ 16.  These conditions, he alleges, limit his ability to "sleep[]," "concentrat[e]," and "work[]," and cause him "to be distracted, have trouble concentrating, and experience heightened stress during social interaction."  *Id.*

---

[1] The Court draws the following facts from the AC.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" (citation omitted)).  For purposes of resolving the motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations in the AC as true, drawing all reasonable inferences in C.C.'s favor.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

In May 2016, C.C. was diagnosed with Stage 3 Hodgkin's Lymphoma and underwent chemotherapy, which aggravated his PTSD and anxiety. *Id.* ¶¶ 17–18. C.C. "openly" disclosed his diagnoses to Google during his employment and discussed with colleagues how he "coped with his disabilities." *Id.* ¶ 19.

### c.    *FMLA leave and accommodation requests*

On December 4, 2023, C.C. requested, and Google authorized, medical leave under the FMLA, "due to his disability and accompanying symptoms." *Id.* ¶ 20. During this leave, his medical providers identified his commute into New York City, including "taking public transportation . . . and walking the sidewalks," as "triggers" for his PTSD symptoms, causing him to experience "fear and concern for his well-being." *Id.* ¶¶ 21–22. As a result, C.C. was forced remain "vigilant and constantly on-guard," which impeded his ability to "work, focus, and concentrate." *Id.* ¶ 22. To help C.C. "cope with these symptoms," his medical providers recommended "fully remote work" and that he take "breaks throughout the day" for two years. *Id.* ¶¶ 24–25.

On March 1, 2024, C.C. returned from FMLA leave. *Id.* ¶ 26. Upon his return, he requested three workplace accommodations to help him perform his job: that he be allowed (1) to work remotely, except for required in-person meetings or travel; (2) a one-hour lunch break each day; and (3) 15–30-minute breaks between meetings. *Id.*

With respect to C.C.'s request for remote work, at the time of his requests, Google allegedly maintained a "soft" policy allowing employees to work remotely two days per week. *Id.* ¶ 28. But that policy "was not strictly enforced"; in practice, C.C. and his colleagues worked remotely three to four days per week. *Id.* In-person meetings were infrequent because C.C.'s direct supervisor, Flora Ching, worked "fully remotely," *id.* ¶ 30, and Google "encourage[ed]"

virtual meetings "to minimize travel costs," *id.* ¶ 31. C.C. did not seek to modify Google's

stated in-person meeting or travel requirements but instead requested permission to work

remotely other than when his attendance at in-person meetings was required. *Id.* ¶ 32.

With respect to C.C.'s requests for one-hour lunch breaks and 15-to-30-minute breaks

between meetings, the AC alleges many Google employees took one-hour lunch breaks, which

were "documented" on their calendars. *Id.* ¶ 40. C.C.'s requests envisioned his using these

breaks to "catch up on emails, document meeting notes, and perform other non-meeting work."

*Id.* ¶ 34.

d.    *Denial of accommodations and reassignment process*

The AC alleges that Google denied C.C.'s accommodation requests on the ground that he

was unable to perform the essential functions of his position with or without accommodations.

*Id.* ¶ 35. On March 29, 2024, Google placed C.C. on unpaid leave. *Id.* ¶ 43.

During his leave, Google entered C.C. into its "priority reassignment" process—a

program intended to help employees seeking workplace accommodations "identify and apply for

open roles for which they are qualified and where they can be accommodated." *Id.* ¶ 42. During

a several-week period, C.C. identified more than 25 open roles at Google for which he believed

he was qualified and in which his disabilities could be accommodated. *Id.* ¶ 44. These roles

included global product lead, *id.* ¶ 48; Google cloud service manager enablement lead, *id.* ¶ 53;

strategic employer engagement lead, *id.* ¶ 55; sales enablement consultant, *id.* ¶ 56; Apigee sales

specialist, *id.* ¶ 57; Apple partnerships manager (YouTube), *id.* ¶ 58; and innovation consultant,

*id.* ¶ 59, among others. Google rejected C.C.'s bid to take on each role, citing either a lack of

required qualifications or an inability to accommodate his disabilities. *Id.* ¶ 47. The AC also

4

alleges that Google "changed" the position descriptions for open roles after the relevant hiring

manager met with C.C., "thereby disqualify[ing] him" from consideration. *Id.*

        *e.     Termination*

On June 27, 2024, approximately four months after C.C. returned from FMLA leave and

requested accommodations, Google terminated C.C.'s employment. *Id.* ¶ 60.

## B.    Procedural History

On October 15, 2024, C.C. filed the initial Complaint, which brought the above federal

and state claims, with subject-matter jurisdiction based on the federal claims. Dkt. 1 ("Compl.").

On December 23, 2024, Google moved to dismiss the Complaint. Dkt. 6. On December 26,

2024, the Court directed C.C., by January 14, 2025, to file any amended complaint or opposition

to the motion. Dkt. 8.

On January 15, 2025, C.C. filed the AC, the operative complaint today. Dkt. 10. On

February 4, 2025, Google moved to dismiss the AC, Dkt. 13, and filed a memorandum of law in

support, Dkt. 14 ("Def. Br."). On February 13, 2025, forgoing the opportunity provided by the

Court to file a Second Amended Complaint, C.C. opposed Google's motion. Dkt. 15 ("Pl. Br.").

On March 20, 2025, Google replied. Dkt. 21 ("Def. Reply Br.").

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly

dismissed where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving the motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch*, 699 F.3d at 145. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.    Discussion

Google moves to dismisses all claims in the AC, which are for (1) disability discrimination, (2) failure to accommodate, and (3) retaliation for seeking accommodations, all brought under the ADA, NYSHRL, and NYCHRL; and (4) retaliation for taking leave under the FMLA.

### A.    Disability Discrimination

#### 1.    ADA

To make out a *prima facie* case of disability discrimination in violation of the ADA, a plaintiff must plausibly allege that (1) the employer is subject to the ADA; (2) the employee is disabled or perceived to be disabled within the meaning of the ADA; (3) the employee is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (4) the employee suffers an adverse employment action because of his disability. *See, e.g., Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024)

The AC's disability discrimination claim is based on C.C.'s termination. In moving to dismiss, Google challenges the AC's pleading of, among others, the fourth element. It argues

that the AC does not plausibly allege causation—that C.C. was terminated *because of* his disability.[2]  Google is correct.

Courts in this Circuit apply a "but-for" standard to assess causation.  To survive a motion to dismiss under this standard, a complaint must plausibly allege that discrimination was a "but-for cause of [the] adverse employment action." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 717 (S.D.N.Y. 2020) (citing *Natofsky v. City of New York*, 921 F.3d 337, 346 (2d Cir. 2019)).  The complaint need not allege that discrimination was the employer's "sole but-for cause" for the adverse employment action; it must, however, allege that the action would not have occurred absent the discrimination.  *Morris v. City of New York*, 153 F. Supp. 2d 494, 500 (S.D.N.Y. 2001) (citing *Parker v. Columbia Pictures*, 204 F.3d 326, 336–37 (2d Cir. 2000)).  Conclusory allegations of causation do not suffice; the complaint must plead facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Measured against these standards, the AC does not plausibly allege that C.C.'s alleged disabilities—PTSD and anxiety—were a but-for cause of his termination.  It does not allege direct evidence of discrimination.  And it does not allege any circumstances from which a discriminatory motivation for the termination can be fairly inferred.

As to direct evidence, a complaint can adequately plead an inference of but-for causation by alleging explicit "statements or . . . conduct reflecting animus towards people with disabilities." *Yzaguirre v. KIPP NYC Pub. Charter Sch.*, No. 24 Civ. 1500, 2025 WL 795732, at

---

[2] Google does not dispute the first element—that it is an employer subject to the ADA, *see* Dkt. 14—but it challenges the other three.  Because the Court finds that the AC fails to plausibly allege the fourth element, it does not here address Google's challenges to the second and third. Later in this decision, however, in addressing the AC's failure-to-accommodate claim under the ADA, the Court addresses Google's challenge to the AC's allegation that C.C. has a covered disability. *See infra*, pp. 14–15.

*10 (S.D.N.Y. Feb. 7, 2025) (citation omitted), *report and recommendation adopted sub nom.* *Yzaguirre v. Levin*, 2025 WL 804771 (S.D.N.Y. Mar. 13, 2025); *see also Howe v. Town of Hempstead*, No. 4 Civ. 656, 2006 WL 3095819, at *7 (2d Cir. 2006) (comments must be made by "decision-maker or by someone who had great influence over the decision-maker") (citation omitted). However, the AC does not allege *any* statements or actions by any decision-maker at Google—at any time—suggesting an intent to discriminate in any respect against C.C. (or any other person) based on their disability.[3]

As to circumstantial evidence, a complaint can adequately plead an inference of causation in several ways. It can plead an inference of discriminatory motivation based on the employer's treatment of workplace comparators, by alleging that the plaintiff "received different treatment or consideration than non-disabled applicants because of his disability." *Yzaguirre*, 2025 WL 795732, at *10. It can plead facts revealing a pattern of discrimination in the workplace against other employees based on same protected characteristic. *See Smith v. Pergola 36 LLC*, No. 22 Civ. 4052, 2022 WL 17832506, at *5 (S.D.N.Y. Dec. 21, 2022) ("patterns of discrimination" can suggest discriminatory motive (quoting *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 204 (2d Cir. 2014)). In a disability case, it can plead "temporal proximity between . . . disclosure of [the employee's] disability" and an adverse action, such as termination. *Kamiel v. Hai St. Kitchen & Co. LLC*, No. 119 Civ. 5336 (PAE) (SDA), 2022 WL 19410317, at *5 (S.D.N.Y. Aug. 11, 2022), *report and recommendation adopted*, 2023 WL 2473333 (S.D.N.Y. Mar. 13, 2023). It can plead

---

[3] *See, e.g., Pagan v. Morrisania Neighborhood Fam. Health Ctr.*, No. 12 Civ. 9047, 2014 WL 464787, at *5 (S.D.N.Y. Jan. 22, 2014) (sustaining ADA discrimination claim based on, among other allegations, discriminatory remarks); *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 260 (S.D.N.Y. 2009) (same); *see also Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 403 (S.D.N.Y. 2013) (dismissing ADA discrimination claim and noting absence of discriminatory remarks), *aff'd*, 586 F. App'x 739 (2d Cir. 2014).

that the employer, in taking the adverse action, deviated from ordinary procedures in a manner suggestive of pretext for discrimination. *See Moore v. Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 497–98 (S.D.N.Y. 2013).

The AC, however, is devoid of facts circumstantially supporting an inference that Google took an adverse action against C.C. based on his disability.

It does not plead facts about comparators supporting an inference of discriminatory motivation. To do so, the complaint would have had to allege that Google treated C.C. "less favorably than a similarly situated employee outside his protected group." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 254 (E.D.N.Y. 2012) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003), *aff'd*, 713 F.3d 163 (2d Cir. 2013)). As to C.C.'s termination, however, the AC does not allege that any similarly situated employee without a disability was retained while C.C. was terminated.

The AC instead seemingly pursues an inference of discriminatory intent with respect to C.C.'s termination based on Google's purportedly different treatment of him relative to others with respect to a separate workplace decision: whether to permit additional remote work. It alleges that Google informally permitted employees "who were not disabled" to work remotely three to four days per week. AC ¶ 28. It alleges that the denial of C.C.'s request for remote work (under which he would be in person only as needed) bespeaks disability discrimination and that the inference of such discrimination should carry over to Google's decision to terminate him. *Id.* ¶¶ 28, 83–84.

But even if such an inference could carry over to that separate decision, the AC falls far short of pleading facts supporting the inference that Google discriminated based on disability with respect to its authorization of remote work. For such an inference to arise based on the

9

treatment of a comparator, a complaint must plausibly allege that the plaintiff was "similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (citation omitted); *see, e.g.*, *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 127 (2d Cir. 2019) (complaint that did not identify similarly situated individuals failed to adequately plead an inference of discriminatory intent).

The AC does not do so. Its brief and generalized allegations do not allege that any similarly situated employee to C.C. (*e.g.*, one with similar job responsibilities) outside C.C.'s protected class (*e.g.*, without disabilities) was treated more favorably (*i.e.*, permitted to work remotely beyond the limits of Google's policy). The only employee it identifies as working remotely more often than permitted by Google's policy is C.C.'s supervisor, whom the AC alleges worked "100% remotely." AC ¶ 30. But the AC does not plead that this supervisor's relevant circumstances, such as job duties and basis for fully remote work, were the same as C.C.'s but for his disability. On the contrary, that C.C.'s proposed comparator was his supervisor necessarily implies the two had differing job duties. *See, e.g., Dawson v. Hudson Valley DDSO/OPWDD*, No. 11 Civ. 8030, 2015 WL 2330298, at *5 (S.D.N.Y. Apr. 14, 2015) (supervisors generally not considered materially similar to supervisees) (citation omitted). *See generally EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 255 (2d Cir. 2014) (to plead substantial similarity, complaint must plausibly allege "the jobs compared entail common duties or content, and do not simply overlap in titles or classifications") (citation omitted). Thus, the

AC does not plausibly support an inference of discriminatory motivation based on comparator treatment.[4]

The AC also does not plead facts supporting an inference of discriminatory motivation based on temporal proximity. C.C. requested accommodation for his disability on March 1, 2024, AC ¶ 26, and was terminated on June 27, 2024, *id.* ¶ 60. This three-and-a-half-month gap is too long to give rise to inference of causation. *See, e.g., Samuels v. Urb. Assembly Charter Sch. for Computer Sci.*, No. 23 Civ. 1379, 2024 WL 4008165, at *6 (S.D.N.Y. Aug. 30, 2024) (two months or less sufficient); *Kamiel*, 2023 WL 2473333, at *4 (S.D.N.Y. Mar. 13, 2023) (same; collecting cases).

The AC also does not allege that Google departed from its regular processes in connection with C.C.'s termination. It alleges that after denying his accommodations requests, Google enrolled C.C. in its "priority reassignment" process—a "Google mechanism by which an employee seeking workplace accommodations can identify and apply for open roles"—and considered him for more than 25 internal vacancies. AC ¶¶ 42–44. These measures suggest an attempt to find an alternative role for C.C. They contrast with cases in which an employer's abrupt or irregular adverse actions have supported an inference of discrimination.[5] *See Zito v.*

---

[4] Separately, the AC broadly alleges that C.C. was denied one-hour lunch breaks, while other team members "confirmed that they took 1-hour lunch breaks and . . . had similar breaks documented on their calendars. AC ¶ 40. For multiple reasons, that sparse allegation also does not support that Google discriminated against C.C. based on his disabilities with respect to lunch breaks. It does not allege concretely that any co-worker with such notations on her calendar was similarly situated to C.C. in all material respects but for his disabilities. On the pleadings, even assuming that other coworker(s) were permitted longer lunch breaks than C.C., it is conjectural that he was denied the same lunch break because of his disabilities. Indeed, it is not well-pled that a decision—comparable to that allegedly made as to C.C.—was ever made by Google as to these co-workers' lunch breaks. The presence of a lunch break notation on a coworker's calendar, without more, does not support that such a decision was made.
[5] The AC conclusorily states that Google "searched for and created reasons" to reject the transfers C.C. sought, AC ¶ 47, but does not plead any facts supporting that Google's efforts to

11

*Donahoe*, 915 F. Supp. 2d 440, 447 (S.D.N.Y. 2012) (failure to "participate in good faith" or "make reasonable efforts" to identify necessary accommodations may support an inference of discriminatory intent (citation omitted)); *Goonan v. Fed. Rsrv. Bank of New York*, 916 F. Supp. 2d 470, 480 (S.D.N.Y. 2013) (bad faith may be inferred where an employer "obstructs or delays the interactive process" (citation omitted)). Rather, Google's extended engagement with C.C. to find him an alternative role undercuts any inference that Google, motivated by discrimination, was intent on terminating him. *See, e.g.*, *Tafolla v. Heilig*, 80 F.4th 111, 123 (2d Cir. 2023) (employer's efforts to accommodate plaintiff undercut inference of discriminatory intent); *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 114 (2d Cir. 2001) (same); *Thompson v. City of New York*, No. 98 Civ. 4725, 2002 WL 31760219, at *6 (S.D.N.Y. Dec. 9, 2002) (same).

The AC, in sum, lacks well-pled facts supporting a reasonable inference of causation. The Court accordingly dismisses the ADA disability-discrimination claim.

### 2.    NYSHRL and NYCHRL

For the same reasons, the AC fails to state a *prima facie* case of disability discrimination under the NYSHRL and NYCHRL. Even when assessed under the more lenient standards of the state and city statutes, the AC does not plausibly allege causation.

The Court assesses the claim under the NYCHRL, as it undisputedly supplies the most lenient liability standard, or at a minimum, a standard as lenient as the NYSHRL.[6] *See Farmer*

---

find him an alternative position were in bad faith, *see Twombly*, 550 U.S. at 555 ("labels and conclusions" not sufficient to survive motion to dismiss).

[6] Until 2019, the NYCHRL's standards were keyed to the more demanding standards of federal law. In 2019, however, the NYCHRL was amended to be construed "liberally . . . regardless of whether federal civil rights laws . . . with provisions worded comparably . . . have been so construed." N.Y. Exec. Law § 300. The case law has yet to resolve whether the NYSHRL is now to be construed *in pari materia* with the NYCHRL or the state law requires more. *See Kurtanidze v. Mizuho Bank, Ltd.*, No. 23 Civ. 8716 (PAE), 2024 WL 1117180, at *12 (S.D.N.Y.

*v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020) ("NYCHRL uses the same framework as Title VII and the NYSHRL, but contains, as to some elements, more liberal pleading and proof standards." (citation omitted)); *Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734, 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020) (NYCHRL must be viewed "independently from and more liberally than [its] federal and state counterparts" (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009))).

On the element of causation, courts applying the NYCHRL use a motivating-factor test rather than the but-for causation standard applicable under federal law. A complaint must plausibly plead that "the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Lenzi*, 944 F.3d at 107 (emphasis omitted) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013)). This necessary inference may be supported by well-pled facts reflecting "a variety of circumstances," including an employer's criticism of an employee in "degrading terms, invidious comments about others in the employee's protected group, or more favorable treatment of employees outside the protected group." *Detouche v. JTR Transp. Corp.*, No. 17 Civ. 7719, 2020 WL 7364116, at *10 (S.D.N.Y. Dec. 14, 2020) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (cleaned up)).

None of those factors is alleged. As reviewed above, the AC contains not a hint of direct evidence of disability discrimination. Nor does it plead facts that could circumstantially support an inference of discriminatory intent, such as more favorable treatment of a comparator outside

---

Mar. 13, 2024). *Compare Arazi v. Cohen Bros. Realty Corp.*, No. 20 Civ. 8837, 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) (amendment "aligns" NYSHRL with NYCHRL), *with Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (amendment brings NYSHRL "closer to" NYCHRL).

the protected class, temporal proximity of events, or departures from regular procedure. The AC's allegation that C.C.'s disability was a motivating factor for his termination is entirely conclusory. Accordingly, it fails to state a claim for disability discrimination under the NYCHRL, and by extension, under the NYSHRL. *See, e.g.*, *Ndongo v. Bank of China Ltd.*, No. 22 Civ. 5896, 2023 WL 2215261, at *6 (S.D.N.Y. Feb. 24, 2023) ("Retaliation claims that fail under the 'more lenient' NYCHRL standard necessarily fail under the NYSHRL standard as well." (citing *Heron v. Medrite Testing, LLC*, No. 21 Civ. 9471, 2022 WL 1214179, at *7 (S.D.N.Y. Apr. 25, 2022)).

The Court dismisses the NYSHRL and NYCHRL disability-discrimination claims.

### B.    Failure to Accommodate

#### 1.    ADA

Google next argues that the AC does not plausibly plead that Google violated the ADA by failing to accommodate C.C.'s PTSD and anxiety.

To state a failure-to-accommodate claim under the ADA, a complaint must plead that "(1) the plaintiff is a person with a disability under the meaning of [the ADA]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (cleaned up)). Google argues that the AC does not plausibly plead the first and third elements—namely, that C.C. (1) has a "disability" and (2) could perform the essential functions of his job with reasonable accommodations. *See* Dkt. 14.

On both elements, the Court holds with C.C. and sustains the claim.

First, the AC adequately pleads that C.C. has a "disability" under the ADA. The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include, *inter alia*, "caring for oneself," "performing manual tasks," "standing," "breathing," "concentrating," "thinking," "communicating," and "working." *Id.* § 12102(2)(A).

The AC alleges that C.C. suffers from PTSD and anxiety stemming from a "brutal" 2014 attack in New York City. AC ¶ 15. It alleges that his symptoms include "fear, worry, distress, mental anguish, flashbacks, and nightmares," *id.* ¶ 16; that these can last for "hours or days," *id.* ¶ 24; and that these conditions limit his ability to "sleep[]," "concentrate[e]," and "work[]" and cause him "to be distracted, have trouble concentrating, and experience heightened stress during social interaction." *Id.* ¶ 16. It further alleges that, in May 2016, C.C. was diagnosed with Stage 3 Hodgkin's Lymphoma and underwent chemotherapy, which aggravated his PTSD and anxiety. *Id.* ¶¶ 17–18.

These allegations directly implicate a number of the "major life activities" identified by the ADA. Case law addressing similar conditions supports that C.C.'s PTSD and anxiety, as pled, qualify as a disability under the ADA. *See, e.g., Acosta v. Kennedy Children's Ctr.*, No. 24 Civ. 3358 (PAE), 2025 WL 70141, at *5 (S.D.N.Y. Jan. 10, 2025) (plaintiff with "PTSD, panic attacks, and anxiety," which impaired her "breathing and consciousness," plausibly alleged a disability under the ADA); *Balchan v. City Sch. Dist. of New Rochelle*, No. 21 Civ. 4798, 2023 WL 4684653, at *14–15 (S.D.N.Y. July 21, 2023) (same for plaintiff with PTSD and anxiety, resulting in lack of sleep, fatigue, and loss of appetite); *see also Burgess v. New Sch. Univ.*, No. 23 Civ. 4944, 2024 WL 4149240, at *13 (S.D.N.Y. Sept. 11, 2024) (accepting parties'

assumption that plaintiff with PTSD and anxiety, among other conditions, had a disability under the ADA); *Goonan*, 916 F. Supp. 2d at 481 (similar).

Second, the AC pleads facts supporting a reasonable inference that C.C., "with reasonable accommodation . . . could perform the essential functions" of his job. *McMillan*, 711 F.3d at 125. Whether an accommodation is reasonable "involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 539 (S.D.N.Y. 2014) (quoting *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995)).

Here, C.C.'s medical providers recommended that he work remotely with periodic breaks for two years to help him manage his PTSD and anxiety and enable him to continue performing his job duties. AC ¶ 25. Based on these recommendations, C.C. requested three accommodations: that (1) his work be remote, subject to required in-person obligations; (2) he receive one-hour lunch breaks; and (3) he be able to take 15–30-minute breaks between meetings. *Id.* ¶ 26.

To begin, the AC adequately pleads that authorizing remote work, with limited exceptions, for C.C. would have accommodated his disability and been reasonable. The AC alleges that C.C.'s medical providers had identified his commute into New York City, where he had been attacked, as "a trigger for the onset of his PTSD and anxiety symptoms." *Id.* ¶ 21. In particular, "taking public transportation in New York City and walking the sidewalks" caused C.C. "extreme fear and concern for his well-being . . . thereby impacting his ability to work, focus, and concentrate." *Id.* ¶ 22. The AC alleges that the diagnosis linked his symptoms to his commute and that remote work, by eliminating his need to travel regularly into the city, would

have minimized that provocation. *See id.* ¶¶ 21–22, 32. It further alleges that C.C. could have performed his job remotely, as even before requesting accommodations, C.C. commuted to the office for onsite work only "occasionally" and traveled for business "once quarterly." *Id.* ¶ 85. By including "carve-out[s] for occasional, required in-person meetings and business-related travel," C.C.'s accommodations request would have allowed him to continue these commitments. *Id.* ¶ 32; *see, e.g.*, *Acosta*, 2025 WL 70141, at *6 (plaintiff adequately pled that remote work would allow her to manage PTSD symptoms while performing essential job functions).

The AC also adequately pleads that allowing C.C. to work remotely (subject to exceptions) would not have imposed an undue burden on Google. Google already maintained a "soft policy" permitting remote work two days per week, which "was not strictly enforced," *id.* ¶ 28, and "encourage[ed] employees to meet virtually and to travel less" to minimize costs, *id.* ¶ 31. In-person team meetings were "rare," and many of C.C.'s team members lived elsewhere in the United States. *Id.* ¶ 30. Even when in the office, C.C. allegedly "spent most of [his time] on his computer and seldom[] attended [in-person] meetings." *Id.* ¶ 29. Thus, the AC alleges, C.C.'s request for remote work was largely "similar . . . [to the] conditions" under which he had been working, *id.* ¶ 88, and consistent with "Google's policies and practices at the time," *id.* ¶ 33. These allegations, taken together, adequately plead that C.C.'s request for remote work, subject to carve-outs, would have reasonably accommodated his PTSD and anxiety while not unduly burdening Google. *See, e.g.*, *King v. New York State Dep't of Educ.*, No. 23 Civ. 1400, 2024 WL 4664280, at *10 (N.D.N.Y. Nov. 4, 2024) (sustaining ADA claim where plaintiff, already remote, was denied authorization for additional remote work); *Goonan*, 916 F. Supp. 2d at 476 (same); *cf. Grimes v. N.Y. & Presbyterian Hosp.*, No. 23 Civ. 652, 2024 WL 816208, at

*6 (S.D.N.Y. Feb. 26, 2024) (similar, in Title VII context); *Jackson v. New York State Off. of Mental Health-Pilgrim Psychiatric Ctr.*, No. 23 Civ. 4164, 2024 WL 1908533, at *8 (E.D.N.Y. May 1, 2024) (sustaining Title VII claim where plaintiff sought fully remote work for duties she performed remotely for over a year).

The AC also adequately pleads that C.C.'s request for one-hour lunch breaks and 15–30 minute breaks between meetings were reasonable accommodations. It alleges that these breaks would have enabled C.C. "to manage his thoughts and the symptoms of his disabilities." AC ¶ 34. Because C.C. intended to use the breaks "for non-meeting work," such as "checking emails or documenting notes," rather than for personal matters, the AC alleges, they would have neither imposed a hardship on Google nor abridged C.C.'s "work hours or otherwise interfere[d] with the essential functions of his job." *Id.*; *see also Brtalik v. S. Huntington Union Free Sch. Dist.*, No. Civ. 10-0010, 2010 WL 3958430, at *9 (E.D.N.Y. Oct. 6, 2010) (sustaining failure-to-accommodate claim where plaintiff's alleged disabilities were "short-lived, requiring only intermittent and short breaks from work or certain duties"); *cf. Peten v. Stericycle, Inc.*, No. Civ. 15-872, 2017 WL 8813133, at *8 (E.D.N.Y. Dec. 21, 2017), *report and recommendation adopted*, 2018 WL 679886 (E.D.N.Y. Feb. 1, 2018) (at summary judgment, request for "opportunity to take periodic breaks to accommodate . . . stress and anxiety" was reasonable); *Stephens-Buie v. Shinseki*, No. 9 Civ. 2397, 2011 WL 2574396, at *7 (S.D.N.Y. June 27, 2011) (at summary judgment, request for breaks resulting in "substantial reduction in . . . working hours" was unreasonable).

To be sure, Google resists these conclusions. But its bare factual representation that C.C.'s requested accommodations were incompatible with its operational needs cannot be credited at the pleadings stage. The reasonableness of a proposed accommodation is a fact-

intensive question that is generally ill-suited for resolution on a motion to dismiss.[7] *See Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) ("The reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by a factfinder." (quoting *Wernick v. Fed. Rsrv. Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir.1996))); *Staron*, 51 F.3d at 356 (same). After discovery, Google will have the opportunity, with the benefit of the standard applicable at summary judgment, to argue that the evidence does not support C.C.'s claim that he was denied a reasonable accommodation. But, pending factual development, the AC plausibly supports the inference that, had his requests for remote work (subject to exceptions) and lunch and between-meeting breaks been granted, C.C.'s symptoms would have been alleviated, and he would have been able to perform the essential functions of his job.

The Court accordingly sustains the AC's claim that Google failed to accommodate C.C.'s disability in violation of the ADA.

### 2.    NYSHRL and NYCHRL

Because the AC states a plausible failure-to-accommodate claim under the ADA, it necessarily also states a claim under the NYSHRL and NYCHRL, which are "at least as protective" as the ADA. *Dixon v. City of New York*, No. 23 Civ. 8941, 2025 WL 50140, at *12 (S.D.N.Y. Jan. 7, 2025) (plaintiff stating a failure-to-accommodate claim under the ADA "necessarily states a failure-to-accommodate claim under the NYSHRL and the NYCHRL"); *Burgess*, 2024 WL 4149240, at *18 (same); *Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 372 (S.D.N.Y. 2018) (same).

---

[7] So is whether a job function is "essential," as that inquiry turns on the employer's description of the position and how the job is actually performed in practice. *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 140 (2d Cir. 1995).

The Court thus denies the motion to dismiss the NYSHRL and NYCHRL failure-to-accommodate claims.

**C.    Retaliation**

**1.    ADA**

To state a retaliation claim under the ADA, a complaint must allege that (1) the plaintiff engaged in a protected activity; (2) the employer was aware of that activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

In arguing that the AC does not plead a *prima facie* case of retaliation, Google focuses on the fourth element—that the AC fails to plausibly allege a causal connection between C.C.'s protected activity (his request for accommodations for his PTSD and anxiety) and the ensuing adverse action (his termination).[8]

To adequately plead causation for an ADA retaliation claim, a complaint must plausibly allege that "the desire to retaliate was the but-for cause of the challenged employment action." *Piligian*, 490 F. Supp. 3d at 718 (quoting *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015)); *see also Anderson v. City of New York*, 712 F. Supp. 3d 412, 433 (S.D.N.Y. 2024). This causal connection can be shown either (1) indirectly, by pleading "that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct"; or

---

[8] Google does not dispute that C.C.'s request for accommodations was a protected activity or that his termination was an adverse employment action. *See, e.g.*, *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002) (seeking reasonable accommodation of a disability constitutes protected activity)); *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (termination is an adverse employment action).

(2) directly, by pleading "retaliatory animus directed against the plaintiff." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

For much the same reason it does not plausibly plead disability discrimination, the AC does not plausibly plead that C.C.'s termination was in retaliation for his request for accommodations.

First, the AC again does not plead any direct evidence of retaliation, such as words or actions indicative of "retaliatory animus." *Id.* Courts have sustained claims of retaliation where, *inter alia*, a defendant was alleged to have made explicit threats of retaliation, *see, e.g., Zabar v. New York City Dep't of Educ.*, No. 18 Civ. 6657, 2024 WL 4289641, at *14 (S.D.N.Y. Sept. 24, 2024), or engaged in purposeful adverse transfers, *see, e.g., Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006). The AC does not allege anything of the sort. It also does not allege that Google reduced C.C.'s work responsibilities after he made his accommodations request. *See, e.g., Bethea v. Winfield Sec. Corp.*, No. 23 Civ. 922, 2023 WL 8650004, at *6 (S.D.N.Y. Dec. 14, 2023) (reduction in schedule and responsibilities post-complaint supported inference of retaliation), *reconsideration granted*, 2024 WL 2783753 (S.D.N.Y. May 29, 2024). Nor does it allege that his request was held against him in performance reviews.[9] *See, e.g., Franklin v. Consol. Edison Co. of New York*, No. 98 Civ. 2286, 1999 WL 796170 (S.D.N.Y. Sept. 30, 1999). The AC instead merely labels the termination decision "retaliatory conduct," AC ¶ 109—a label that does not merit weight, as it is "a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678.

---

[9] The AC alleges that C.C. performed his job "exceptionally, as evidence[d] by his performance reviews, awards, and other commendations" before his accommodations request. But it is silent as to performance reviews afterwards. AC ¶ 36.

Second, the AC does not plead circumstances from which an inference of retaliation could plausibly arise. It does not adequately plead that a similarly situated employee outside C.C.'s protected class was treated differently. *See, e.g., Samuel Ricarolos Mitchell, Jr. v. Planned Parenthood of Greater N.Y., Inc.*, No. 23 Civ. 1932, 2025 WL 1795378, at *10 (S.D.N.Y. June 30, 2025). It does not plead a history of Google retaliating against other employees requesting disability accommodations. In fact, it does not even allege that any other Google employee *sought* such accommodations. *See Carpenter v. City of Mount Vernon*, No. 15 Civ. 661, 2018 WL 4935950, at *5 (S.D.N.Y. Oct. 11, 2018) (in Title VII retaliation context, "causation may be established by showing that . . . similarly situated employees were treated differently" (citation omitted)); *Barkley v. Penn Yan Sch. Dist*, 442 F. App'x 581, 584 (2d Cir. 2011) (same). It does not plead that Google departed from established procedures in terminating C.C. *See, e.g., Eldaghar v. City of New York Dep't of Citywide Admin. Servs.*, No. 2 Civ. 9151, 2008 WL 2971467, at *12 (S.D.N.Y. July 31, 2008) (plaintiff established *prima facie* Title VII retaliation claim in part by alleging "deviations . . . from policies and procedures"); *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993) (same). If anything, Google's attempts to reassign C.C. after receiving his accommodations request undermines an inference of retaliation. AC ¶¶ 42–44. And it does not allege close temporal proximity between the accommodation request and termination. Courts in this Circuit have generally held that a gap of "greater than two months" between the protected activity and adverse employment action does not give rise to an inference of causation. *Doner-Hedrick v. N.Y. Inst. of Tech.*, 874 F. Supp. 2d 227, 246 (S.D.N.Y. 2012); *see, e.g., Feliciano v. City of New York*, No. 14 Civ. 6751 (PAE), 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (four-month gap insufficient); *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 343 (S.D.N.Y. 2020) (same; three-month gap); *see*

*generally Caddick v. Pers. Co. I LLC*, No. 16 Civ. 7326, 2018 WL 3222520, at *9 (S.D.N.Y. June 29, 2018) ("nine or ten weeks" are outer bounds of temporal proximity).[10] The three-and-a-half month gap between C.C.'s accommodation request on March 1, 2024, AC ¶ 26, and his termination on June 27, 2024, *id.* ¶ 60, is well outside this range.

The AC is thus devoid of any allegations—direct or circumstantial—giving rise to a plausible inference of retaliatory intent. The Court dismisses the ADA retaliation claim.

### 2.    NYSHRL and NYCHRL

For the same reasons, the AC fails to state a *prima facie* case of retaliation under the NYSHRL and NYCHRL.

As with disability discrimination claims, courts have not yet definitively resolved whether retaliation claims brought under the NYSHRL following its 2019 amendment should now be analyzed identically to NYCHRL claims or require a higher standard. *Compare Heiden v. N.Y.C. Health & Hosps. Corp.*, No. 20 Civ. 10288, 2023 WL 171888, at *16 (S.D.N.Y. Jan. 11, 2023) (retaliation claims under the NYSHRL and ADA are "governed by the same standards"), *and Luzunaris v. Baly Cleaning Servs.*, No. 23 Civ. 11137, 2024 WL 3926708, at *19 (S.D.N.Y. July 29, 2024), *adopted sub nom. Luzunaris v. Baly Cleaning Servs. Inc.*, No. 23 Civ. 11137, 2024 WL 3925919 (S.D.N.Y. Aug. 22, 2024) (same), *with McSweeney v. Cohen*,

---

[10] The three cases C.C. cites as to temporal proximity are easily distinguished. *See* AC ¶ 107. In *Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009), causation was held adequately pled notwithstanding a four-month gap because other pled facts supported the inference of discriminatory intent. In *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013), the four-month gap coincided with a natural break in the plaintiff's employment such that his return represented the "first actual opportunity" for retaliation. There is no comparable allegation here. And *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009), did not involve the ADA. It arose in the very different context of alleged retaliation by prison officials. The Second Circuit found plausible that these officials delayed their retaliation until a new development (plaintiff's fight with another inmate) gave them "an opportune time" and "a ready explanation for any injuries suffered by [the plaintiff]." *Id.* at 129–30. Nothing of the sort is alleged here.

No. 24 Civ. 01503, 2025 WL 966022, at \*26 (S.D.N.Y. Mar. 31, 2025) (standards for retaliation claims under the NYCHRL and NYSHRL are "more forgiving" than under the ADA). By any analysis, however, it does not supply a more lenient pleading standard than that of the NYCHRL. The Court therefore applies the NYCHRL's standard here.

The AC fails to plead causation within the meaning of the NYCHRL.[11] The ADA's but-for causation standard does not apply under the NYCHRL. A complaint "need only allege that retaliatory animus played *some* role in the employer's decision." *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 157 n.6 (S.D.N.Y. 2022) (citing *Cardwell v. Davis Polk & Wardwell LLP*, No. 19 Civ. 10256, 2020 WL 6274826, at \*37 (S.D.N.Y. Oct. 24, 2020)); *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 284 (S.D.N.Y. 2024) (NYCHRL requires that protected activity be a "motivating factor," not the "but-for" cause" (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)).

But C.C.'s retaliations claims do not satisfy even this lesser standard. As the Court has reviewed, the AC does not plead direct or circumstantial evidence that would support an inference of retaliation. And the four-month gap between C.C.'s accommodation request and his termination does not give rise to such an inference under the cases applying the NYCHRL. *See, e.g., Stoddard v. Eastman Kodak Co.*, 309 F. App'x 475, 480 (2d Cir. 2009) (no causal connection where protected activity occurred two months earlier); *O'Reilly v. Consol. Edison Co. of N.Y., Inc.*, 173 F. App'x 20, 22 (2d Cir. 2006) (summary order) (same; three-month gap).

---

[11] The AC does plead conduct by Google (its termination of C.C.) within the scope of the NYCHRL. The Court has held that termination constituted an adverse employment action within the ADA's meaning. The NYCHRL requires less—that the employer's conduct was "reasonably likely to deter a person from engaging in protected activity." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012) (citation omitted). C.C.'s termination necessarily satisfies that standard.

The AC's failure to plead a retaliation claim under the NYCHRL necessarily means that it fails to plead such a claim under the NYSHRL as well. *Ndongo v. Bank of China Ltd.*, No. 22 Civ. 5896, 2023 WL 2215261, at *6 (S.D.N.Y. Feb. 24, 2023).

The Court thus dismisses the NYSHRL and NYCHRL retaliation claims.

### D.    Retaliation for Taking FMLA Leave

The AC's final claim is of retaliation under the FMLA.

"[T]he FMLA prohibits retaliation against employees who attempt to exercise their rights under the statute." *Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 166 (2d Cir. 2017). To state a *prima facie* case, a plaintiff must allege that (1) he engaged in a protected activity under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of retaliatory intent. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004); *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 194–95 (S.D.N.Y. 2011). C.C. claims that his termination on June 27, 2024 was in retaliation for having taken FMLA medical leave between December 4, 2023 and March 1, 2024.[12]  AC ¶¶ 20, 60.

In moving to dismiss, Google argues that the AC fails to plausibly allege facts supporting a causal connection between these events. Google is correct.

---

[12] The FMLA entitles eligible employees to "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition." 29 U.S.C. § 2612(a)(1). On return from such leave, an employee is entitled to be restored to either "the position of employment held by the employee when the leave commenced," or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* Here, C.C. exhausted his 12-week FMLA leave when he took medical leave between December 4, 2023 to March 1, 2024. There is no allegation that his later medical leave—from March 29 to June 27, 2024—was pursuant to the FMLA. AC ¶ 117.

The FMLA's causation standard is more lenient than the ADA's, requiring only that the protected activity be a "motivating factor" in the adverse employment action, not its "but for" cause. *Woods*, 864 F.3d at 166; *see also Carter v. TD Bank, N.A.*, No. 23-950, 2024 WL 2828470, at *4 (2d Cir. June 4, 2024) ("Plaintiff need only demonstrate that his exercise of his FMLA rights 'was a motivating factor in the [employer's] adverse employment action.'" (citation omitted)); *Stanley v. Phelon*, No. 23-731-cv, 2024 WL 1453872, at *2 (2d Cir. Apr. 4, 2024) (same). An inference of retaliatory intent may be established "(i) indirectly through a showing that the protected activity was followed closely by discriminatory treatment, commonly known as 'temporal proximity;' (ii) indirectly through other evidence such as disparate treatment of similarly-situated employees; or (iii) directly through a showing of evidence of retaliatory animus toward plaintiff by defendant." *Alexander v. Bd. of Educ. of City Sch. Dist. of N.Y.C.*, 107 F. Supp. 3d 323, 328–29 (S.D.N.Y. 2015) *aff'd sub nom. Alexander v. The Bd. of Educ. of City of New York*, 648 F. App'x 118 (2d Cir. 2016) (citation omitted).

The AC, however, does not plausibly plead such facts.

First, the temporal proximity between C.C.'s protected activity and his termination is insufficient to give rise to an inference of retaliation. C.C. was terminated on June 27, 2024. Whether measured from the start of his FMLA leave on December 4, 2023, or his return on March 1, 2024, the gap of four to seven months is too long to establish temporal proximity. Courts in this Circuit applying the FMLA have held that an inference of retaliation does not arise where the adverse action occurs more than two months after the protected activity. *Compare Rivera v. Target Corp.*, No. 24 Civ. 6965, 2025 WL 1616863, at *7 (S.D.N.Y. June 6, 2025) (two to three months is outer limit), *with Daly v. Westchester Cnty. Bd. of Legislators*, No. 1 Civ. 4642, 2021 WL 229672, at *12 (S.D.N.Y. Jan. 22, 2021) (two or three months insufficient).

26

Even using the measurement more favorable to C.C., the nearly four-month gap between the end of his FMLA leave and his termination is too long to give rise to such an inference.

Second, the AC does not allege any circumstantial evidence, such as disparate treatment of similarly situated employees who did *not* take FMLA leave or a pattern of adverse actions against those who did, supporting an inference of retaliatory intent. *See, e.g., Rivera*, 2025 WL 1616863, at *7 (dismissing claim in part for failure to allege "disparate treatment of similarly situated employees"); *Mineo v. Town of Hempstead*, No. 22 Civ. 4092, 2024 WL 1077874, at *16 (E.D.N.Y. Feb. 23, 2024), *report and recommendation adopted*, 2024 WL 1072569 (E.D.N.Y. Mar. 12, 2024) (similar); *cf. Alexander*, 107 F. Supp. 3d at 328–29 (similar, in Title VII context). *See generally United States v. City of New York*, 631 F. Supp. 2d 419, 427 (S.D.N.Y. 2009) ("practice or pattern" of adverse actions can support an inference of retaliation).

Third, the AC lacks factual allegations that could supply direct evidence of retaliatory animus towards C.C. It does not allege any statements or writings by Google officials disparaging C.C. for taking FMLA leave or tying the decision to terminate C.C. to his having done so. *See, e.g., Alexander*, 107 F. Supp. 3d at 330 (granting motion to dismiss in part because plaintiff failed to allege remarks plausibly raising an inference of retaliatory intent); *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 208 (D. Conn. 2012) (denying motion to dismiss given remarks plausibly viewed as retaliatory) (citing *Schreiber v. Worldco, LLC*, 324 F.Supp.2d 512, 518 (S.D.N.Y.2004)).

The Court thus dismisses the FMLA retaliation claim.

## CONCLUSION

For the reasons above, the Court grants the motion to dismiss all claims except for C.C.'s failure-to-accommodate claims under the ADA, NYSHRL, and NYCHRL.  An order scheduling an initial conference in this matter will issue separately.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 15, 2025
       New York, New York